## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AUGUSTUS SIMMONS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CAPTAIN FALICESANO,** *et al.* | : | **NO. 16-5709** |

### MEMORANDUM

**KEARNEY, J.**                                                          **March 24, 2017**

A prisoner must file his complaint alleging a variety of physical and psychological injuries caused by graphic disciplinary actions inflicted upon him by prison officers in July 2009 within two years of discovering his injuries. Otherwise, the General Assembly's policy decision precluding personal injury cases filed after the two year statute of limitations requires we dismiss his claim as untimely.

The *pro se* prisoner before us today pleads his full awareness of physical injuries arising from the officers' July 2009 conduct at least as early as 2010. The *pro se* prisoner also alleges psychological harm as early as 2010 although he claims not knowing of the diagnostic nexus between his psychological harm and the 2009 conduct until October 2016. If timely filed and proven, the officers' alleged 2009 conduct should be investigated. But we cannot allow the depravity of the officers' alleged graphic misconduct to supplant Pennsylvania's longstanding two-year statute of limitations. As he admits, the *pro se* prisoner knew of his injuries, and suffered from effects of the officers' alleged misconduct, since at least 2010. He did not sue until October 2016 and absent concealment or other reason to ignore plead admissions of knowing his injuries at least six years before filing his case, we must grant the officers' motion and dismiss the *pro se* prisoner's complaint.

## I.    Facts alleged in the Complaint[1]

On a presently unknown date in July 2009, state actors Captain Falicesano, Major Ottinger, Lieutenant Collins, Captain Carbo, Cert Banks,[2] Cert Davis, and Corrections Officer Pendgraph allegedly harmed 20 year old Augustus Simmons then in their supervision as a prisoner in the Montgomery County Correctional Facility.[3]

Mr. Simmons claims the July 2009 confrontation started when he asked Cert Davis to empty the trash from his cell.[4]  After Cert Davis denied Mr. Simmons' request, Mr. Simmons still attempted to empty his trash into a garbage can outside his cell.[5]  Mr. Simmons alleges his disobedience led the officers into a series of physical acts against him which, if proven true, warrant investigation into proportionate discipline beyond this Court.

Cert Davis told Mr. Simmons, "[Y]ou've just made the stomp out list."[6]  Approximately ten minutes later, Cert Davis, Cert Banks, Officer Pendgraph and Lt. Collins rushed to Mr. Simmons' cell, and Lt. Collins instructed Mr. Simmons to get on his knees and place his hands behind his back.[7]  Mr. Simmons followed Lt. Collins' orders.[8]

After officials handcuffed Mr. Simmons, two officers lifted him off his knees and slammed him back and forth against the cell walls.[9]  The officers then slammed Mr. Simmons to the floor where they punched and kicked him in his ribs, chest and face.[10]  While transporting Mr. Simmons, the officers slammed his head into the "K-2 pod bubble . . . K-pod stairwell . . . the downstairs door . . . the first floor bubble . . . and the K and J block metal door[s]."[11]  The officers continued to beat Mr. Simmons before tossing him through the "pod door on the K-6 unit."[12]  Lt. Collins told his fellow officers, "I want something broken on [Mr. Simmons]."[13]  The officers then tossed Mr. Simmons onto a metal bunk, where they began spraying pepper spray in his eyes.[14]  Cert Davis attempted to jam his fingers into Mr. Simmons' eyes and rub

2

pepper spray on his body.[15]  Mr. Simmons alleges he passed out, and woke up to his pants pulled down and pepper spray being put all over his genitals by Cert Davis while Cert Banks, Lt. Collins, and Officer Pendgraph laughed.[16]  After tossing Mr. Simmons out of the cell and onto the floor, one of the correctional officers kicked Mr. Simmons in his testicles before rushing him down the stairs.[17]  While rushing Mr. Simmons down the stairs, the officers slammed Mr. Simmons' head repeatedly into multiple metal doors.[18]

While transporting Mr. Simmons to the Prison's medical area, Lt. Collins described their conduct as, "We gave him the K-pod treatment."[19]  Lt. Collins, once at the medical area, told the head nurse not to clean the pepper spray off Mr. Simmons' face, but to note in his file a nurse did the job.[20]  Before Mr. Simmons received any medical treatment, with pepper spray still on his face and genitals and in his hair and mouth, Lt. Collins rushed Mr. Simmons back into the K-pod, ripped off his shirt, and threw him on the floor.[21]  Once the officers lifted Mr. Simmons off the floor, the officers tossed Mr. Simmons against the wall where Cert Davis choked him and Cert Banks punched him in his genitals.[22]  Cert Banks did not stop punching Mr. Simmons until he begged Lt. Collins for his life.[23]

The officers then dragged Mr. Simmons back to his cell and left him in handcuffs for three days.[24]  During these three days, the officers deprived Mr. Simmons of food, showers, exercise time, and phone calls.[25]  Mr. Simmons alleges Lt. Collins threatened to press charges against him for assault if he disclosed the incident to anyone.[26]  Disregarding this coercion, Mr. Simmons reported the incident to the shift commander, and two weeks later, "was sent upstate" to state prison.[27]

Beginning in 2010, Mr. Simmons admits suffering numerous injuries, including: "serious nerve pain, joint pain, spinal pain, and constant migraines."[28]  Because officers sprayed pepper spray in Mr. Simmons' eyes, Mr. Simmons "must wear glasses due to his fading eyesight."[29]

Mr. Simmons also alleges he suffered psychological injuries as a result of the 2009 incident, including terrible dreams, depression, a sleeping disorder, and post-traumatic stress disorder.[30]  On October 16, 2016, a psychologist at Pennsylvania's State Correctional Institution at Greene, where Mr. Simmons is currently incarcerated, formally diagnosed Mr. Simmons with the sleeping disorder, depression and post-traumatic stress disorder.[31]

## II.    Analysis

Two weeks after meeting with the psychologist in the state prison, Mr. Simmons sued Lt. Collins, Cert Davis, Cert Banks and Officer Pendgraph for the July 2009 incident, alleging assault, aggravated assault, terroristic threats, sexual assault, conspiracy to commit assault, excessive force, unlawful restraint, psychological torture, and governmental fraud violating Mr. Simmons' Fifth, Eighth and Fourteenth Amendment rights.[32]  He also sued Captain Falicesano, Major Ottinger, and Captain Carbo under the theory of supervisory liability and government fraud in violation of Mr. Simmons' First and Fifth Amendment rights.[33]  Mr. Simmons also sued unknown persons described as the "Montgomery County medical department" for negligence, malpractice, and fraud.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6)[34] because Mr. Simmons "does not allege a plausible claim that is filed within the applicable statute of limitations."[35]  Defendants argue Mr. Simmons' § 1983 claims are barred by Pennsylvania's two-year statute of limitations governing § 1983 claims.[36]  In the alternative, Defendants request

4

we consider materials outside the pleadings and convert the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56.[37]

The face of his complaint confirms Mr. Simmons' claims are barred by the statute of limitations. "Statutes of limitations are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"[38] The law requires a plaintiff to file claims "within a specified time period after the incident that gave rise to the claim occurred."[39] The "statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose."[40] For § 1983 claims arising in Pennsylvania, the statute of limitations is two years.[41] Similarly, to the extent Mr. Simmons asserts claims for negligence, medical malpractice, and fraud, the statute of limitations is two years.[42]

"While Pennsylvania law controls which statute of limitations is applied, federal law determines when a cause of action accrues for a [§] 1983 claim."[43] "Accrual is the occurrence of damages caused by the wrongful act—'when a plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief.'"[44] Under federal law, a § 1983 civil rights claim will accrue, and the statute of limitations begins to run, "when the plaintiff 'knew or should have known of the injury upon which its action is based.'"[45] The time at which a claim accrues is determined through an objective inquiry.[46] "We ask not what the plaintiff actually knew but what a reasonable person should have known."[47]

"As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."[48] "The cause of action accrues even though the full extent of the injury is not then known or predictable."[49] A

plaintiff's "[l]ack of knowledge, mistake, or misunderstanding [does] not toll the running of the statute of limitations."[50]

The Pennsylvania discovery rule is objective.[51] "The 'polestar' of the discovery rule is not the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff.[52] Courts must evaluate a plaintiff's diligence under the reasonable person standard.[53] "The very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury."[54]

Although reasonable diligence is an objective test, our Court of Appeals in *Miller* found the objective test can take into account "the differences between persons and their capacity to meet certain situations and circumstances confronting them at the time in question."[55] "Under this test, a party's actions are evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for their protection of their own interest and the interest of others."[56]

"Whether a damaged party, exercising reasonable diligence, could ascertain that he has been injured, and by what cause, is a factual determination."[57] The time period for filing a suit can be extended under some circumstances and in accord with state law.[58] When a plaintiff, despite the exercise of due diligence, is unable to discover his injury or its cause, Pennsylvania courts have applied the discovery rule to toll the statute of limitations until the plaintiff is "put in a position to discover the injury and its cause."[59] Both Pennsylvania and federal courts "within [the Third] Circuit…have applied the discovery rule where requiring a plaintiff's knowledge of his injury would otherwise be unreasonable."[60] "Under the Pennsylvania discovery rule, the statute of limitations begins to run when the complaining party 'knows, or reasonably should

know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'"[61] We apply the discovery rule where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause."[62] This is normally a jury question, but we may decide this issue if "the facts are so clear that reasonable minds cannot differ."[63]

Mr. Simmons' § 1983 and state law claims are barred by Pennsylvania's statute of limitations. The incident resulting in Mr. Simmons' physical and psychological injuries occurred in 2009. Mr. Simmons alleges in reference to the 2009 incident, "Since then I have terrable [sic] dreams, nerve pain, a sleeping disorder, depression that leaves me in horrible mood and PTSD (post-traumatic stress disorder)."[64] Based on these allegations, a reasonable person in Mr. Simmons' position would have discovered his injuries resulting from the 2009 incident when the incident occurred in 2009. Mr. Simmons argues he should not be penalized for a limited education and no knowledge of his right to sue.[65] Lack of knowledge of your rights does not toll the statute of limitations unless you can show Defendants' concealment, lulling representations or other misconduct.

As the discovery test is objective, and we do not rely upon Mr. Simmons' personal perspective, we must find a reasonable person having suffered this discipline and later suffering from a sleeping disorder and depression would, along with his physical injuries, seek to bring a claim in the two years after he began suffering these symptoms. We have no pleading suggesting the Defendants concealed Mr. Simmons' injury. He knew he suffered physical and psychological harm by 2010. He may not have known, nor would any lay person, of his medical diagnosis of PTSD until 2016. But he admits knowing of the symptoms of sleeplessness, anxiety and depression since the incident.

7

Even if we allowed Mr. Simmons to amend to plead some other later onset of another form of damages, his present pleading admits the onset of his injury. Any amendment would be futile. Because Mr. Simmons filed this action in 2016, many years after the statute of limitations had run in 2012, Mr. Simmons' § 1983 claims and state law claims are barred under the two-year statute of limitations. "We will sometimes make an exception to the rule where its rigid application would be unfair because a defendant concealed its wrong and prevented a diligent plaintiff from bringing her claim within the limitations period. This is not such a case."[66]

To the extent Mr. Simmons sues for violations of federal or state criminal statutes, we lack jurisdiction to adjudicate violations of these criminal statutes because they contain no private right of action.[67]

### III.   Conclusion

Mr. Simmons' claims are barred under the two-year statute of limitations. We dismiss Mr. Simmons' Complaint in the accompanying Order.

---

[1] When a plaintiff is a *pro se* prisoner, the plaintiff is given greater "leeway in the form of their papers than other parties" represented by counsel. *Watkins v. Merriel*, No. 12–4851, 2015 WL 1266794, *8 (D.N.J. 2015). A *pro se* plaintiff's complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." *Rivera v. Chester Cnty.*, No. 15-5609, 2016 WL 5076207, *1 (E.D. Pa. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). We must construe the facts in the complaint "liberally in favor of the plaintiff." *Id.*

[2] Mr. Simmons does not define the term "Cert".

[3] ECF Doc. No. 1.

[4] *Id.* § IV, ¶ 4.

[5] *Id.* ¶ 5.

[6] *Id.*

8

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 6.

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 7.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* ¶ 8.

[18] *Id.*

[19] *Id.*

[20] *Id.* ¶ 9

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* ¶ 10.

[25] *Id.*

[26] *Id.*

[27] *Id.* ¶ 11.

[28] *Id.* ¶ 2.

[29] *Id.*

[30] *Id.* § IV, ¶ 9.

[31] *Id.* § IV, ¶ 1.

[32] *Id.* § VI ¶ A.

[33] *Id.* ¶ B.

[34] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal,* 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal,* 556 U.S. at 675, 679); *see also Burtch,* 662 F.3d at 221; *Malleus v. George,* 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township,* 629 F.3d 121, 130 (3d. Cir. 2010).

[35] ECF Doc. No. 6, at p. 1. "[T]he Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer." *Robinson v Johnson,* 313 F.3d 128, 135 (3d. Cir. 2002). "Rule 12(b) states that '[e]very defense…shall be asserted in the responsive pleading... if one is required, except the following defenses may at the option of the pleader be made by motion….'" *Id.* (quoting Fed. R. Civ. P. 12(b)). Because the defenses listed in Rule 12(b) do not include a statute of limitations defense, the Federal Rules of Civil Procedure technically require a defendant to plead a statute of limitations defense in an answer, not in a motion to dismiss. *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) (citing *Robinson,* 313 F.3d at 134–35). Despite this, our Court of Appeals "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that a cause of action has not been brought within the statute of limitations.'" *Robinson,* 313 F.3d at 136 (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). "If the bar is not apparent on the face of the complaint, then [a statute of limitations defense] may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). "If it is clear from the face of the complaint that the relevant statute of limitations has run, then the complaint must be dismissed as

untimely." *Elliott Reihner Siedzikowski & Egan v. Pa. Emp. Benefit Tr. Fund*, 161 F.Supp.2d 413, 420 (E.D. Pa. 2001).

[36] ECF Doc. No. 6, at p. 6.

[37] We decline to convert Defendants' motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56. Captain Falicesano moves for summary judgment on the "basis of [his] statute of limitations defense as supported by the facts set forth in the Affidavit of Deputy Warden Sean P. McGee." ECF Doc. No. 6. "To decide a motion to dismiss, [we] generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt*, 770 F.3d at 249 (citations omitted). If we consider matters outside the pleadings, a motion to dismiss must be converted to a motion for summary judgment. *Rodenbaugh v. Santiago*, No. 16-2158, 2017 WL 194238, *8 (E.D. Pa. 2017) (citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1192 (3d Cir. 1993)). "The decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion under Rule 56." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992). Deputy Warden McGee in his affidavit asserts, "Mr. Simmons has not been incarcerated at MCCF at any point in time after March 15, 2012, when he was transferred to the custody of the Pennsylvania Department of Corrections." ECF Doc. No. 6-3 ¶ 4. Because the statute of limitations on Mr. Simmons' § 1983 claims begin to run when Mr. Simmons' knew or should have known of the injuries for which his claims are based, and not when he last served a jail sentence at MCCF, Deputy Warden McGee's affidavit is immaterial to determining whether Mr. Simmons' § 1983 claims are time-barred under Pennsylvania's two-year statute of limitations period.

[38] *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)).

[39] *Mast v. Lafayette C.*, No. 13-4161, 2015 WL 409774, *4 (E.D. Pa. 2015).

[40] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 397 (2007)).

[41] 42 Pa. C.S. § 5524(2); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993); *Reitz v. County of Bucks*, 125 F.3d 139, 143 (3d Cir. 1997).

[42] *See Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991); 2 Pa. C.S. § 5524(7).

[43] *Elliott Reihner Siedzikowski & Egan*, 161 F.Supp.2d at 420; *see also Kach*, 589 F.3d at 634.

[44] *Dique v. N.J. St. Police*, 603 F.3d 181, 185 (3d Cir. 2010).

[45] *Kach*, 589 F.3d at 634 (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 635.

[50] *Mest v. Cabot Corp.*, 499 F.3d 502, 510 (3d Cir. 2006) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

[51] *Id.*

[52] *Id.* (internal quotation omitted).

[53] *Id.*; *see also Pocono Int'l*, 468 A.2d at 471 (finding a "party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period").

[54] *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997).

[55] *Pocono Int'l*, 468 A.2d at 471 (citing *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)).

[56] *Miller*, 463 F.3d at 276 (internal citations omitted).

[57] *Id.*

[58] *Dique*, 603 F.3d at 185.

[59] *Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) (citing *Pocono Int'l*, 468 A.2d at 409).

[60] *Id.* at 609.

[61] *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 276 (3d Cir. 2006) (citing *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991).

[62] *Knopick*, 639 F.3d at 611 (internal citations omitted).

[63] *Id.*

[64] ECF Doc. No. 1, § IV, ¶ 9.

[65] ECF Doc. No. 15, pp. 9, 10.

[66] *Cunningham*, 814 F.3d at 164 (quoting *Order of R.R. Telegraphers*, 321 U.S. 34 at 348–49).

---

[67] *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 634 (E.D. Pa. 2014); *Walthour v. Herron*, No. 10-01495, 2010 WL 1877704, at *2 (E.D. Pa. May 6, 2010) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)).